UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1: 16-CV-000 11-GNS

**AMY DANIELS**                                                                                                                             **PLAINTIFF**

**VS.**

**NANCY A. BERRYHILL, Acting
Commissioner of Social Security**                                                              **DEFENDANT**

**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION**

BACKGROUND

Before the Court is the complaint (DN 1) of Amy Daniels ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 12) and Defendant (DN 19) have filed a Fact and Law Summary.

Pursuant to General Order No. 2014-17, this matter has been referred to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law and Recommendations. By Order entered June 30, 2016 (DN 9), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff filed an application for Disability Insurance Benefits on January 18 2012[1] (Tr. 264-270). Plaintiff alleged that she became disabled on January 3, 2012, as a result of sleep apnea, high blood pressure, heart trouble, kidney failure, back trouble, depression, migraine headaches, arthritis, and asthma (Tr. 264, 304). On May 29, 2013, Administrative Law Judge Karen Jackson ("ALJ") conducted a video hearing from Lexington, Kentucky (Tr. 143, 70-72). Plaintiff and her attorney, Stephen Poindexter, participated from Campbellsville, Kentucky (Id.). Linda Taber, a vocational expert, also participated and testified during the video hearing (Id.).

In a decision dated July 19, 2013, the ALJ evaluated this adult disability claim pursuant to the 5-step sequential evaluation process promulgated by the Commissioner (Tr. 143-154). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 3, 2012, the alleged onset date (Tr. 145). At the second step, the ALJ determined that Plaintiff has the following severe impairments:

> [B]ilateral carpal tunnel syndrome and right ulnar neuropathy, status-post left carpal tunnel release and left ulnar nerve transposition; degenerative joint disease, bilateral knees; mild degenerative disc disease, cervical spine; obesity; fibromyalgia; migraine headaches; autonomic dysfunction/history of syncope/conversion reaction/orthostatic hypotension; mood disorder; anxiety; and learning disorder, not otherwise specified, by history (20 CFR 404.1520(c)).

(Tr. 145). The ALJ concluded that Plaintiff's obstructive sleep apnea, chronic renal insufficiency, hypertension, and a history of incontinence impose no more than a slight or minimal limitation in Plaintiff's ability to perform basic work-related activities on a sustained basis, and,

---

1 The Administrative Law Judge decision indicates the application was filed on January 17, 2012 (Tr. 143). However, the first sentence in the application indicates January 18, 2012 is the date of completion and filing (Tr. 264).

therefore, these impairments are not "severe" within the meaning of the regulations (Tr. 148). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 149).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform less than a full range of light work (Tr. 150-51). More specifically, the ALJ determined:

> [T]he claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit and stand/walk for 6 hours each in an 8-hour workday. She can only occasionally climb ramps or stairs; never ladders, ropes, or scaffolds. She is restricted to no more than occasional balancing, stooping, kneeling, crouching; never crawling. She must avoid exposure to extreme heat; avoid hazards such as unprotected heights or dangerous machinery, full-body vibration and fumes, odors, dusts, gases, poor ventilation. She is limited to frequently handling, fingering and feeling, with the bilateral upper extremities. She can do simple routine work tasks; maintain attention and concentration for 2-hour segments during an 8-hour workday. She is able to adapt to gradual changes in a routine work environment. She can do tasks with no requirement for fast-paced production quotas or goals. She can interact as needed with supervisors and coworkers sufficiently for task completion, with occasional interaction with the general public.

(Id.). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is capable of performing her past relevant work as a sewing machine operator (Tr. 152).

Notwithstanding, the ALJ considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 153). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 153-54). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from January 3, 2012 through the date of the decision, July 19, 2013 (Tr. 154).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 68-69, 161). The Appeals Council granted Plaintiff's request for review, and remanded the case to the ALJ with instructions to evaluate the new and material evidence that plaintiff submitted with her request for review; further evaluate plaintiff's mental impairments in accordance with the special technique described in 20 C.F.R. § 404.152a; and to give further consideration to the plaintiff's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (Tr. 162-63). Notably, the Appeals Council indicated in assessing Plaintiff's maximum residual functional capacity the ALJ should evaluate the medical opinion evidence, including the opinion of the psychiatric consultative examiner Catherine Miller, M.D., pursuant to the provisions of 20 C.F.R. § 404.1527 and Social Security Rulings 96-2p and 96-5p (Tr. 163).

Following remand, the ALJ conducted a video hearing from Lexington, Kentucky, on November 4, 2014 (Tr. 25, 45-47). Plaintiff and her attorney, Stephen Poindexter, participated in the video hearing from Campbellsville, Kentucky (Id.). Laura Whitten Lykins, a vocational expert, testified during the video hearing (Id.). In a decision dated November 26, 2014, the ALJ found that Plaintiff has the following severe impairments:

> [D]egenerative disc disease, cervical spine; degenerative joint disease, bilateral knees; peripheral neuropathy//bilateral carpal tunnel syndrome and ulnar neuropathy, status-post left carpal tunnel release and ulnar nerve transposition; reactive airways disease; fibromyalgia; mood disorder; anxiety disorder; learning disorder, not otherwise specified/possible borderline intellectual functioning (20 CFR 404.1520(c)).

(Tr. 28). The ALJ also found that Plaintiff has the following non-severe impairments:

> [O]bstructive sleep apnea; atrophic left kidney with chronic renal insufficiency; hypertension; a history of stress urinary

4

> incontinence/recurrent urinary tract infections; a history of cardiac arrhythmias/preventricular contraction; migraine headaches; restless leg syndrome; and a history of syncopal episode/conversion reaction/orthostatic hypotension/autonomic dysfunction.

(Tr. 30). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 30).

At the fourth step, the ALJ found that plaintiff has the residual functional capacity to perform less than a full range of light work (Tr. 32). More specifically, the ALJ determined as follows:

> [T]he claimant can lift and/or carry and push or pull 20 pounds occasionally, and 10 pounds frequently; stand/walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; avoid even moderate exposure to extreme heat or cold; frequently handle, finger and feel, bilateral upper extremities; avoid hazards such as unprotected heights or dangerous machinery, full-body vibration and no more than occasional exposure to fumes, odors, dusts, gases, poor ventilation. She is restricted to simple routine work tasks. She can maintain attention and concentration for 2-hour segments during an 8-hour workday involving simple routine tasks. She is able to adapt to gradual changes in a routine work environment Interact frequently with supervisors and coworkers sufficiently for task completion, with occasional interaction with general public (20 CFR 404.1567(b)).

(Tr. 32-33). Notably, this time the ALJ concluded that Plaintiff is unable to perform any past relevant work (Tr. 35).

The ALJ proceeded to the fifth step where she considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 35-36). The ALJ found that Plaintiff is capable of performing a significant number of jobs

that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from January 3, 2012 through the date of the decision, November 26, 2014 (Tr. 36-37).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 14). Additionally, Plaintiff submitted additional evidence from Kalidas Sahetya, M.D., addressing the time frame January 4, 2012 to September 11, 2014 (Tr. 4). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

    1)      Is the claimant engaged in substantial gainful activity?

    2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

    3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

    4)      Does the claimant have the residual functional capacity to return to his or her past relevant work?

    5)      Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step. Specifically, the ALJ found that Plaintiff is capable of making a successful adjustment to other work that exist in significant numbers in the national economy despite having the residual functional capacity to perform less than a full range of light work.

A

1. Plaintiff's Argument

Plaintiff disagrees with Finding No. 3 because the ALJ failed to find that Plaintiff's stress urinary incontinence/recurrent urinary tract infections and migraine headaches are "severe" impairments (DN 12 PageID # 1243, 1250-54). Further, Plaintiff asserts that the ALJ erred in Finding Nos. 5 and 10 because the ALJ did not consider the actual impact that these impairments had on Plaintiff's residual functional capacity and her ability to perform substantial gainful activity (Id. citing Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987).

    2. Defendant's Argument

    Defendant asserts since the ALJ found that Plaintiff had several "severe" impairments the real issue is whether the ALJ considered the functional limitations resulting from these two conditions at the remaining steps in the sequential evaluation process (DN 19 PageID # 1280- citing Maziarz, 837 F.3d at 244). Defendant acknowledges there are reports of migraine headaches throughout the record and that Plaintiff testified about using Flexeril when she experienced migraine headaches (Id.). Defendant argues the ALJ considered this evidence but found more compelling Plaintiff's failure to seek out or receive significant treatment for her migraine headaches (Id.). Additionally, Defendant points out since Dr. Rice and Ms. Kingrey did not list headaches as an underlying impairment or as a symptom of Plaintiff's impairments (Tr. 1077), their opinion that she would miss more than 5 days of work per month could not have been based on Plaintiff experiencing migraine headaches (Id.).

    Defendant points out that the ALJ acknowledged the evidence regarding Plaintiff's urinary incontinence, but asserts that a mere diagnosis does not address the severity of the condition (Id.). Defendant asserts that the treatment record does not substantiate Plaintiff's subjective statements regarding the frequency of her incontinence problems (Id.). Further, Defendant contends that Dr. Rice and Ms. Kingrey (Tr. 1077) did not attribute the need for unscheduled work breaks every 30 minutes to one hour to Plaintiff's urinary incontinence (Id.).

    3. Discussion

    The undersigned finds it unnecessary to decide whether the ALJ erred in failing to find that Plaintiff's stress urinary incontinence/recurrent urinary tract infections and migraine headaches are "severe" impairments. According to the regulations, upon determining that a claimant has at

least one severe impairment, the Administrative Law Judge must continue with the remaining steps in the disability evaluation. 20 C.F.R. § 404.1520(a)(4)(ii) and (c). Here, the ALJ found that Plaintiff suffered from numerous severe impairments (Tr. 28) and, in accordance with the regulations, continued with the remaining steps in the disability determination. Because the ALJ could consider Plaintiff's urinary incontinence and migraine headaches in determining whether she retained sufficient residual functional capacity to perform jobs that exist in significant numbers in the national economy (Tr. 28, 30), the ALJ's failure to find that Plaintiff's urinary incontinence and migraine headaches are severe impairments could not constitute reversible error. *See* Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). In reaching this conclusion, the undersigned notes that substantial evidence in the record supports the ALJ's conclusion that Plaintiff's subjective complaints are not entirely credible in light of the medical evidence regarding treatment sought and received for those conditions (Tr. 28-30, 35). Further, contrary to Plaintiff's assertion, the limitations expressed by Dr. Rice and Ms. Kingrey do not address Plaintiff's urinary incontinence and migraine headaches (Tr. 1076-79). In sum, the undersigned concludes the ALJ's assessment of Plaintiff's urinary incontinence and migraine headaches is supported by substantial evidence in the record and comports with applicable law.

B

1. Plaintiff's Argument

Plaintiff argues that Finding No. 5 is not supported by substantial evidence because the ALJ failed to give controlling weight to the opinions at Tr. 1076, 1077-78, and 1079 from Plaintiff's treating "physicians" at the B.F. Taylor Medical Clinic (Dr. Samuel Rice and Victoria Kingrey, APRN), and the opinions at Tr. 767-79 from consultative psychiatric examiner (Dr.

Miller) (DN 12 PageID # 1243-50). Plaintiff also contends the ALJ failed to provide "good reasons" for discounting these opinions and ignored the consistency of these opinions with Plaintiff's own testimony about her limitations (Id.). Additionally, Plaintiff asserts the residual functional capacity assessment does not properly consider her impairments of stress urinary incontinence/recurrent urinary tract infections and migraine headaches (Id.). Plaintiff contends that based on her medical records, the vocational expert's testimony, and Plaintiff's own testimony, the stress urinary incontinence/recurrent urinary tract infections and migraine headaches precluded her from engaging in substantial gainful activity because of the need for frequent bathroom breaks and frequent absenteeism from work (Id.).

2. Defendant's Argument

Defendant asserts that under the regulations Ms. Kingrey's opinion (Tr. 1076) is not a "medical opinion" because she is not an "acceptable medical source" (DN 19 PageID # 1271- citing 20 C.F.R. § 404.1527(a)(2)). Additionally, Defendant points out that the regulations, at 20 C.F.R. § 404.1527(d)(1), instruct than an opinion that a claimant is "disabled" or unable to work is not a "medical opinion," but rather is a legal opinion on an issue reserved to the Commissioner (Id.). For these reasons, Defendant contends that the ALJ was not obligated to adopt Ms. Kingrey's conclusory legal opinion (Id.). Further, Defendant asserts that the ALJ provided "good reasons" for discounting Ms. Kingrey's opinion, by recognizing that the opinion was vague and inconsistent with Plaintiff's ability to work through at least 2011 (Id.). Moreover, Defendant points out that Ms. Kingrey never signed the opinion (Tr. 1079) indicating Plaintiff became disabled on December 2010, rather only Dr. Rice signed the opinion (Id.).

11

Defendant points out the opinion setting forth Plaintiff's limitations (Tr. 1077-78) was actually drafted by Ms. Kingrey and adopted by Dr. Rice on the same date (Id.). Defendant asserts that Dr. Rice merely opined (Tr. 1079) that Plaintiff had these limitations beginning December 2010 (Id.). Defendant contends that the ALJ provided several "good reasons" for giving no weight to the opinion of Dr. Rice and Ms. Kingrey (Id.). Defendant argues that the ALJ reasonably found their belief that Plaintiff's limitations began in December 2010 was inconsistent with Plaintiff's ability to work after December 2010 (Id.). Defendant asserts that the ALJ provided a detailed summary of the medical evidence and identified objective findings that were inconsistent with the severity of the limitations assessed by Ms. Kingrey and Dr. Rice (Id.). Defendant points out that Plaintiff has not cited any authority suggesting that the ALJ must give deference to a medical opinion simply because it is consistent with a claimant's own reported limitations (Id.).

Defendant contends that the ALJ properly gave little weight to the August 2012 opinion (Tr. 770) of the consultative psychiatrist, Dr. Miller, who opined that Plaintiff would be unable to work for the "next two years" due to a learning disorder, major depression, pulmonary hypertension, and a right heart failure (Id.). Defendant argues that the ALJ reasonably discounted Dr. Miller's opinion because it was based largely on Plaintiff's physical impairments even though the doctor's specialty was psychiatry (Id.). Further, Defendant points out the ALJ recognized that Dr. Miller's opinion was inconsistent with the record as a whole (Id.). Defendant also points out that the ALJ specifically noted that Plaintiff had sought treatment but could not afford it after her insurance stopped paying (Id. citing Tr. 28).

3. Discussion

The Sixth Circuit has provided the following comprehensive explanation regarding the standards for weighing medical opinions:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id.* § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).
>
> The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).
>
> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).
>
> On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead

> weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013).

Notably, application of the treating source rule is limited to a "medical opinion" rendered by an "acceptable medical source" who has, or has had, and ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502, 404.1513 (a) (1), 404.1527(h)(2) and (c); Social Security Rule 96-2p; Gayheart, 710 F.3d at 375-376; Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007); Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). Nurse practitioners are not classified as "acceptable medical sources" under the regulations. 20 C.F.R. §404.1513(a). Rather, they are one of several types of "medical sources" that are classified as "other sources" evidence. 20 C.F.R. § 404.1513(d)(1). Applying the applicable law to the evidence in the record, the treating source rule does not apply to the opinion (Tr. 1076) rendered by Ms. Kingrey because she is a nurse practitioner. Although the treating source rule does not apply to the opinion rendered by Ms. Kingrey, Social Security Ruling 06-03p indicates the factors set forth in 20 C.F.R. § 404.1527(c) can be applied when the Administrative Law Judge assigned weight to her opinion. This means Ms. Kingrey's opinion can be weighed based on factors such as "the examining relationship (or lack thereof), specialization, consistency, and supportability . . ." and other factors that tend to support or contradict her opinion. Gayheart, 710 F.3d at 376.

>Ms. Kingrey prepared and signed an undated opinion that in pertinent part reads as follows:
>
>>In my opinion, she is unable to work due to her multiple conditions. I have been involved with her care since 2006 and over time her condition has deteriorated preventing her to maintain [sic] employment.

(Tr. 1076). Clearly this is a vocational opinion addressing Plaintiff's ability to work, a determination that is reserved for the ALJ to make in this case. Social Security Ruling 96-5p, 1996 WL 374183, at *2-5 (July 2, 1996). Notwithstanding, the ALJ assigned "little weight" to this "conclusory and undated statement" because it failed to indicate when Plaintiff became unable to work and was inconsistent with other substantial evidence in the record regarding Plaintiff's actual capabilities (Tr. 33, 34). Thus, the ALJ provided "good reasons" for discounting Ms. Kingrey's opinion. The undersigned concludes that the ALJ's assignment weight to the opinion of Ms. Kingrey is supported by substantial evidence in the record and comports with applicable law.

Apparently, Ms. Kingrey filled out and signed the Treating Source Statement dated February 10, 2014 (Tr. 1077-78). Dr. Rice also signed the document, indicating that he adopted the limitations set forth therein (Tr. 1077-78). Thus, the limitations expressed within the document are those of both Ms. Kingrey and Dr. Rice. Additionally, on February 10, 2014, Dr. Rice signed a statement indicating Plaintiff's limitations and restrictions, outlined in the Treating Source Statement (Tr. 1077-78), have existed since December 2010 (Tr. 1079). The ALJ recognized that other evidence in the record showed that plaintiff was working in 2011, and she had earnings of $22,848.79, her second-highest lifetime yearly earnings, and well above the substantial gainful activity level (Tr. 33). The ALJ found Plaintiff's actual ability to work in 2011 was inconsistent with the limitations expressed by Dr. Rice and Ms. Kingrey that indicated

Plaintiff had been unable to work since December 2010 (Tr. 33). The ALJ also discussed medical evidence in the record that was inconsistent with the limitations expressed by Dr. Rice and Ms. Kingrey (Tr. 34). The ALJ then indicated she gave little weight to the opinion of Dr. Rice because it was inconsistent with the weight of the evidence (Tr. 34). Thus, the ALJ provided "good reasons" for discounting the opinions of Dr. Rice and Ms. Kingrey. The undersigned concludes that the ALJ's assignment of weight to the limitations expressed by Dr. Rice and Ms. Calgary, including the opinion regarding onset of disability, is supported by substantial evidence in the record and comports with applicable law.

      The ALJ accurately summarized the report prepared by the consultative psychiatric examiner, Dr. Miller (Tr. 34, 767-70). The ALJ noted that part of Dr. Miller's opinion about Plaintiff being incapable of working was based on Plaintiff's reported history of pulmonary hypertension and right heart failure, conditions that were not substantiated by objective medical evidence and a specialist, Dr. Sahetya (Tr. 34). Further, the ALJ noted that Dr. Miller's opinion regarding major depression was inconsistent with other evidence in the record including the treatment record of Dr. Zia and Plaintiff's daily activities (Tr. 34). The ALJ explained that she gave little weight to Dr. Miller's opinion because she focused on Plaintiff's physical impairments, and not mental impairments in reaching the conclusions, and the opinion was inconsistent with the evidence as a whole (Tr. 34). The undersigned concludes that the ALJ has provided "good reasons" for discounting the opinion of Dr. Miller. The undersigned also concludes that the ALJs assignment of weight to the opinion expressed by Dr. Miller is supported by substantial evidence in the record and comports with applicable law.

C

Plaintiff argues that Finding No. 10 is not supported by substantial evidence because Plaintiff believes the combination of her impairments would result in no jobs that she could perform on a full-time sustained basis (DN 12 PageID # 1244). Plaintiff disagrees with Finding No. 11 because she believes that substantial evidence in the record indicates that she has been under a disability since January 3, 2012 (DN 12 PageID # 1244). For the reasons set forth above the undersigned concludes that substantial evidence in the record supports the ALJ's findings regarding the residual functional capacity of Plaintiff. Additionally, the hypothetical questions posed to the vocational expert are supported by substantial evidence in the record and accurately portray Plaintiff's physical and mental impairments. Therefore, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that Plaintiff is capable of performing a significant number of jobs that exist in the national economy. *See* <u>Bradford v. Sec'y, Dep't. of Health & Human Servs.</u>, 803 F.2d 871, 874 (6th Cir. 1986) (*per curiam*); <u>Varley v. Sec'y of Health & Human Servs.</u>, 820 F.2d 777, 779 (6th Cir. 1987). In sum, the undersigned concludes that the ALJ's determinations set forth in Finding Nos. 10 and 11 are supported by substantial evidence in the record and comport with applicable law.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and it is recommended that judgment be granted for the Commissioner.

## NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

Copies:    Counsel